**DeMarco•Mitchell, PLLC**
Robert T. DeMarco
Michael S. Mitchell
500 N. Central Expressway, 500
Plano, TX 75074
**T**  972-578-1400
**F**  972-346-6791

## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| IN RE: | Case No.:    **23-41387-BTR-11** |
| **North Ponderosa, LLC,**<br>45-2798124<br>9418 Shipman<br>Rowlett, TX 75088 | Chapter:    **11** |
| Debtor. | |

## DISCLOSURE STATEMENT FOR
## NORTH PONDEROSA, LLC'S PLAN OF REORGANIZATION
## [DATED DECEMBER 22, 2023]

# TABLE OF CONTENTS

**ARTICLE I** ................................................................................................................ **3**
   **A.**   **Purpose of This Disclosure Statement.** ..................................................... 3
   **B.**   **Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing** .................. 4
   **C.**   **Disclaimer.** ........................................................................................... 5

**ARTICLE II** .............................................................................................................. **5**
   **A.**   **Summary Description of Debtor's Business.** ................................................ 5
   **B.**   **Management of the Debtor.** ....................................................................... 5
   **C.**   **Events Leading to Bankruptcy** ................................................................... 5
   **D.**   **Significant Events Since the Petition Date.** ................................................ 5
   **E.**   **Projected Recovery of Avoidable Transfers.** ............................................... 6
   **F.**   **Claims Objections.** ................................................................................. 6
   **G.**   **Current and Historical Financial Conditions.** ............................................. 6

**ARTICLE III** ............................................................................................................ **6**
   **A.**   **What is the Purpose of the Plan of Reorganization?** ..................................... 6
   **B.**   **Unclassified Claims.** .............................................................................. 6
      *1.*   *Administrative Expenses* ................................................................ 7
      *2.*   *Priority Tax Claims* ....................................................................... 7
   **C.**   **Classes of Claims and Equity Interests** ..................................................... 7
      *1.*   *Classes of Secured Claims* ............................................................. 7
      *2.*   *Classes of Priority Unsecured Claims* ............................................. 8
      *3.*   *Class[es] of General Unsecured Claims* .......................................... 8
      *4.*   *Class[es] of Equity Interest Holders* ............................................... 8
   **D.**   **Means of Implementing the Plan** .............................................................. 9
   **E.**   **Risk Factors** ......................................................................................... 9
   **F.**   **Executory Contracts and Unexpired Leases** ............................................. 10
   **G.**   **Tax Consequences** ............................................................................... 10

**ARTICLE IV - CONFIRMATION REQUIREMENTS AND PROCEDURES** ...................... **11**

**ARTICLE V - EFFECT OF CONFIRMATION OF PLAN** .............................................. **14**

**ARTICLE VI - OTHER PLAN PROVISIONS** ............................................................. **14**

## ARTICLE I
## INTRODUCTION

This Disclosure Statement ("**Disclosure Statement**") and the accompanying ballots ("**Ballots**") are being furnished by **North Ponderosa, LLC**, ("**Debtor**") to you, the holders of Claims against and Interests in the Debtor, pursuant to section 1125 of the United States Bankruptcy Code in connection with the solicitation of ballots for the acceptance of the **North Ponderosa, LLC's**, Plan of Reorganization ("**Plan**") under Chapter 11 ("**Chapter 11**") of Title 11 of the United States Code ("**Code**" or "**Bankruptcy Code**").  **Capitalized terms used in this Disclosure Statement and not defined herein shall have their respective meanings set forth in the Plan or, if not defined in the Plan, as defined in the Bankruptcy Code.**

On **July 31, 2023**, (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("**Court**" or "**Bankruptcy Court**").

The Debtor submits this Disclosure Statement pursuant to Section 1125 of the Code to all known holders of Claims against and Interests in the Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Plan.  A copy of the Plan is attached hereto as Exhibit "A" and incorporated herein by this reference.  The Plan sets forth in detail the repayment arrangement between the Post-Confirmation Debtor and its creditors.

The source of information for this Disclosure Statement is the Debtor's management and records and all filings in this case. *Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.*

The proposed distributions under the Plan are discussed in Article III of this Disclosure Statement. General unsecured creditors are classified in Class 3, and it is anticipated the holders of Allowed Claims will receive a distribution of 100%, which distributions will be made from the Sale Proceeds.

A.      **Purpose of This Disclosure Statement**.

This Disclosure Statement describes:

        a.      The Debtor and significant events during the bankruptcy case,

        b.      How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),

        c.      Who can vote on or object to the Plan,

        d.      What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Plan,

e.      Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

f.      The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights

## B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### 1.      *Time and Place of the Hearing to Confirm the Plan*

The Disclosure Statement Order fixes _____, 2024, at ____:____ ___.m. Central Prevailing Time, in the Courtroom of the Honorable Judge Rhoades, United States Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, as the date, time, and place for the hearing on Confirmation of the Plan.

### 2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to:

**NORTH PONDEROSA BALLOTS**
**C/O DEMARCO•MITCHELL, PLLC**
**500 N. CENTRAL EXSPRESSWAY, 500**
**PLANO, TEXAS 75074**

See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____, 2024, or it will not be counted.

### 3.      *Deadline For Objecting to the Confirmation of the Plan*

Objections to the confirmation of the Plan must be filed with the Court and served upon counsel for the Debtor and certain other persons identified in the Disclosure Statement Order by _____, 2024.

### 4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

**ROBERT T. DeMARCO**
**DEMARCO•MITCHELL, PLLC**
**500 N. CENTRAL EXSPRESSWAY, 500**
**PLANO, TEXAS 75074**

C.    **Disclaimer**.

*The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

**ARTICLE II**
**BACKGROUND INFORMATION**

A.    **Summary Description of Debtor's Business**.  Debtor is a Texas limited liability company which owns the Real Property.  Other than an agricultural lease entered into by and between the Debtor and Donald Lee Cardwell, there are no business operations.

B.    **Management of the Debtor**.  William H. Gibson manages and operates the Debtor.

After the Effective Date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "**Post-Confirmation Managers**"), will be:

- William H. Gibson

Post-confirmation, William H. Gibson will receive no compensation from the Post-Confirmation Debtor.

C.    **Events Leading to Bankruptcy**.  The primary cause of this bankruptcy filing was a possible forced sale of the Real Property by William Gurley.

D.    **Significant Events Since the Petition Date**.  The following is a description of the events which have occurred since July 31, 2023 (the "**Petition Date**").

1.    Schedules and Statements.  The Debtor's Schedules and Statements were filed on August 19, 2023 [Docket Entry No. 20].

2.    Employment of Professionals.  As of the filing of this Disclosure Statement the only professionals employed by the Debtor were DeMarco•Mitchell, PLLC.

a.    Counsel for Debtor.  DeMarco•Mitchell, PLLC, was employed to represent the Debtor by order entered September 14, 2023 [Docket Entry No. 35].

The Debtor has not found it necessary to engage and/or employ any additional professionals.

3.    Relief from Stay Motion.  William Gurley, on August 11, 2023 [Docket Entry No. 11], filed a motion to lift the automatic stay ("**Stay Motion**").  The Stay Motion remains pending and is presently set for hearing on January 9, 2024.

4.    <u>Dismissal Motion</u>.  Mark Weisbart, bankruptcy trustee for the Donald Lee Cardwell bankruptcy estate, on August 9, 2023 [Docket Entry No. 9], filed a motion to dismiss this bankruptcy case ("**<u>Dismissal Motion</u>**").  The Dismissal Motion remains pending and is presently set for hearing on January 9, 2024.

5.    The Debtor entered into mediation respecting its disputes with William Gurley and Mark Weisbart.  The mediation was concluded without a settlement.  Subsequent to the mediation, the parties continued to discuss settlement, but the negotiations have been protracted thereby necessitating the filing of this Plan and Disclosure Statement.  At this point, it is unknown whether a settlement resolving those disputes will be agreed to by the parties prior to a confirmation hearing.

6.    <u>Plan and Disclosure Statement</u>.  On December 22, 2023, the Debtor filed the Plan and Disclosure Statement.

E.    **Projected Recovery of Avoidable Transfers**.

The Debtor has not yet completed its investigation with regard to prepetition transactions.  If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

F.    **Claims Objections**.

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article 5 of the Plan

G.    **Current and Historical Financial Conditions**.

The Debtor's sole asset is the Real Property.  There are no business operations conducted by the Debtor on the Real Property.  Debtor receives nominal revenue from an agricultural lease it entered into with Donald Lee Cardwell.

**ARTICLE III**
**PLAN SUMMARY**

A.    **What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.    **Unclassified Claims**.

Certain type of claims are automatically entitled to specific  treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount | Treatment |
|---|---|---|
| Professional Fees of DeMarco Mitchell, PLLC | $10,000.00 | Monthly, after the effective date, in an amount to be agreed upon. |
| **TOTAL** | **$10,000.00** | |

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Description | Estimated Amount | Date Assessed | Treatment |
|---|---|---|---|
| None | n/a | n/a | n/a |

C. **Classes of Claims and Equity Interests**

1. *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

| CLASS | DESCRIPTION | IMPAIRED | METHOD OF PAYMENT | ESTIMATED ALLOWED CLAIM | ESTIMATED DISTRIBUTION |
|---|---|---|---|---|---|
| Class 1A | Secured *Ad Valorem* Tax Claims<br><br>**[Collin County]** | YES | Paid in full on the Closing Date | $200.00 | $200.00 |
| Class 1B | Secured Claim of Pavo Salvaje, LLC | YES | Paid in full from the Sale Proceeds | $600,400.00 | $600,400.00 |

2.    *Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept a different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| CLASS | DESCRIPTION | IMPAIRED | METHOD OF PAYMENT | ESTIMATED ALLOWED CLAIM | ESTIMATED DISTRIBUTION |
|---|---|---|---|---|---|
| Class 2 | None | n/a | n/a | n/a | n/a |

3.    *Class[es] of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Classes 3 through 4, which contain general unsecured Claims against the Debtor:

| CLASS | DESCRIPTION | IMPAIRED | METHOD OF PAYMENT | ESTIMATED ALLOWED CLAIM | ESTIMATED DISTRIBUTION |
|---|---|---|---|---|---|
| Class 3 | General Unsecured Claims | YES | Paid in full from the Sale Proceeds | Unknown | Unknown |

4.    *Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are equity interest holders.  In a partnership, equity interest holders include both general and limited partners.  In a limited liability company ("LLC"), the equity interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of equity interest holders:

| CLASS | DESCRIPTION | IMPAIRED | METHOD OF PAYMENT | ESTIMATED ALLOWED CLAIM | ESTIMATED DISTRIBUTION |
|---|---|---|---|---|---|
| Class 4 | Interests | NO | Retain all equity interests in Reorganized Debtor | n/a | n/a |

### D.    Means of Implementing the Plan

*1.    Source of Payments*

The Debtor shall sell the Real Property within 1 year of the Effective Date.  If the Closing Date does not take place with 1 year of the Effective Date, the Debtor shall file a notice with the Court converting the Case to one under chapter 7 of the Bankruptcy Code.

### E.    Risk Factors

CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE <u>ONLY</u> RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

1.    **Projected Financial Information**.  As stated supra, the Financial Projections are dependent on a variety of assumptions.  Moreover, the Financial Projections assume confirmation and consummation of the Plan.  While the Debtor believes the Financial Projections are reasonably attainable, variations between actual financial results and those projected may occur and be material.

a.    <u>Operational Risks</u>.  The Sale Transaction might not close and the case is converted to chapter 7.

2.    **Bankruptcy Considerations**.

a.    <u>Non-Confirmation of the Plan</u>.  While the Debtor believes the Plan satisfies all of the requirements necessary for confirmation by the Court, there can be no assurance that the Court will reach the same conclusion.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes to accept the Plan, as modified.

b.    <u>Non-Occurrence of the Effective Date</u>.  Although the Debtor believes the Effective Date will occur during March, 2023, there can be no assurance as to the timing or that conditions to the Effective Date contained in the Plan will occur.

**F.    Executory Contracts and Unexpired Leases**

Section 6.1 of the Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.  Section 6.1 also sets forth how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in section 6.1 of the Plan will be rejected under the Plan.  Consult your advisor or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

**G.    Tax Consequences**

**THE DEBTOR DOES NOT PURPORT TO PROVIDE TAX ADVICE TO THE HOLDERS OF CLAIMS. THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF POSSIBLE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN, AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FOREGOING DISCUSSION IS FOR INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ON THEIR TAX RETURNS AND TAX LIABILITIES.**

1.    **Tax Consequences of the Plan.**  Implementation of the Plan may result in federal income tax consequences to holders of Claims, Equity Interest Holders, and to the Debtor. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the particular circumstances or facts regarding the Claim of the Creditor or the interests of the Equity Interest Holder. IRS Publication 908, entitled "Bankruptcy Tax Guide" provides valuable information regarding the federal income tax aspects of bankruptcy. The "Bankruptcy Tax Guide" is available from the Debtor upon request made to robert@demarcomitchell.com, or directly from the IRS online at http://www.irs.gov/pub/irs-pdf/p908.pdf.

2.    **Cancellation of Debt**.  Cancellation of the Debtor's debt ("<u>**COD**</u>") is generally considered as taxable income of the Debtor.  COD is the amount by which the indebtedness discharged exceeds any consideration given in exchange.  However, there are exceptions which prevent COD from being treated as taxable income.  To the extent the Debtor is insolvent or the

Debtor is discharged in a bankruptcy proceeding, as is the case at bar, the Internal Revenue Code excludes COD from income.  The statutory exclusion for COD from the Debtor's gross income in a chapter 11 bankruptcy case arises where a discharge is granted by the Court as is requested in the Plan.

3.    **Consequences of COD**.  The Debtor will, however, have certain tax attributes reduced to the COD income.  The tax attributes are generally reduced in the following order:  (i) Net Operating Loss ("**NOL**") for the year of the discharge and NOL carryovers from prior years; (ii) general business tax credit carryovers; (iii) minimum tax credit available as of the beginning of the year following the year of the discharge; (iv) net capital loss for the year of the discharge and capital loss carryovers from prior years; (v) basis of the Debtor's assets; (vi) passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. As a result of the implementation of the Plan, the Debtor will have COD and potential tax attribute reduction. *Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, the resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce its tax liability, if any, otherwise resulting from the Plan implementation.*

4.    **Holders of Allowed Claims**.  The tax consequences associated with distributions under the Plan to the holders of Allowed Claim will depend on, among other things: (i) the consideration received or deemed to have been received by the holder of any such Claim; (ii) whether the Allowed Claim holder reports income on an accrual or cash basis; (iii) the taxable year in which any distributions under the Plan are received by the Allowed Claim holder; whether the Claim was allowed or disputed as of the Effective Date; and whether such Allowed Claim holder had previously written the obligation off as bad debt.

**ALLOWED CLAIM HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

**ARTICLE IV**
**CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that:  the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.  These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

**A.    Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity

interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes **1A, 1B and 3** are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that all remaining classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan.

      *1.*      *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was November 28, 2023.***

      *2.*      *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

      *3.*      *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

●     holders of claims and equity interests that have been disallowed by an order of the Court;

●     holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

●     holders of claims or equity interests in unimpaired classes;

●     holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

●     holders of claims or equity interest in classes that do not receive or retain any value under the Plan;

●     administrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan.***

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

## B. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2].

### 1. Votes Necessary for a Class to Accept the Plan

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. Treatment of Nonaccepting Classes

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

## C. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

## D. Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation is proposed in the Plan.  This is a liquidating Plan.

## ARTICLE V
## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge Of Debtor**

The Debtor will note receive a discharge.

**B.    Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing.

**C.    Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## ARTICLE VI
## OTHER PLAN PROVISIONS

A.    __Important Notices and Cautionary Statements__.

This Disclosure Statement has been compiled by the Debtor to accompany the Plan.  The factual statements, projections, financial information, and other information contained in this Disclosure Statement have been taken from documents prepared by the Debtor, the unaudited Schedules and Statement of Financial Affairs, the Monthly Operating Reports, pleadings filed in the Bankruptcy Case, and information obtained in the Chapter 11 Case.  Any information provided in the Disclosure Statement should not be relied upon unless such information has been independently verified.  ***Nothing contained in this Disclosure* Statement *shall have any preclusive effect against the Debtor (whether by waiver, admission, estoppel or otherwise) in any cause or proceeding which may exist or occur in the future.***  This Disclosure Statement shall not be construed or deemed to constitute an acceptance of fact or an admission by the Debtor with regard to any of the statements made herein, and all rights and remedies of the Debtor is expressly reserved in this regard.   This Disclosure Statement contains statements which constitute the Debtor's, or other third parties' view of certain facts.  All such disclosures should be read as assertions of such parties.  To the extent any paragraph does not contain an express reference that it constitutes an assertion of a particular party, it should be read as an assertion of the party indicated by the context and meaning of such paragraph.  The statements contained in this Disclosure Statement are made as of the Petition Date unless another time is specified

herein, and neither delivery of this Disclosure Statement nor any exercise of rights granted in connection with the Plan shall, under any circumstances, create an implication that there has been no change in the information set forth herein since the date of this Disclosure Statement.

Some of the information contained in this Disclosure Statement, by its nature, is forward looking, contains estimates and assumptions which may prove to be inaccurate, and contains projections which may prove to be wrong, or which may be materially different from actual future results. Each Claimant or Interest holder should independently verify and consult its individual attorney and accountant as to the effect of the Plan on such individual Claimant or Interest holder.  The Debtor strongly urges each recipient entitled to vote on the Plan to review carefully the contents of this Disclosure Statement, the Plan, and the other documents that accompany or are referenced in this Disclosure Statement in their entirety before making a decision to accept or reject the Plan.

B.    **Additional Information**.

If you have any questions about the procedures for voting on the Plan, desire another copy of a Ballot, or seek further information about the timing and deadlines with respect to confirmation of the Plan, please contact DeMarco•Mitchell, PLLC (contact information is provided *infra*).  Note that DeMarco•Mitchell, PLLC,  cannot and will not provide holders of Claims or Interests with any advice, including advice regarding how to vote on the Plan, or the legal effect that confirmation of the Plan will have upon Claims against the Debtor and/or Interests in the Debtor. **Under no circumstances will an inquiry to DeMarco•Mitchell, PLLC, change the Voting Deadline.**

As provided in the Plan, material modifications to the Plan, exhibits to the Plan or documents related to the Plan may be made.  Finally, all pleadings filed in the Case are on file with the Bankruptcy Court and are available for review during normal business hours.  Written requests for a copy of any specific pleading or document may also be made to DeMarco•Mitchell, PLLC.

C.    **Cramdown [Section 1129(b) of the Bankruptcy Code]**

In the event any Impaired Class of Claims shall fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor shall request the Bankruptcy Court to confirm the Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code.

The Court may confirm a plan, even if it is not accepted by all impaired Classes, if the Plan has been accepted by at least one impaired Class of Claims and the Plan meets the "cramdown" provisions set forth in § 1129(b) of the Code.  The "cramdown" provisions require that the Court find that a plan "does not discriminate unfairly" and is "fair and equitable" with respect to each non-accepting impaired Class.  In the event that all impaired Classes do not vote to accept the Plan, the Debtor will request that the Bankruptcy Court nonetheless confirm the Plan pursuant to the provisions of § 1129(b) of the Code.

The Court may find that the Plan is "fair and equitable" with respect to a Class of non-accepting impaired Interests only if (a) the holder of an Interest will receive or retain under the Plan property of a value as of the Plan's Effective Date equal to the greatest of any fixed liquidation preference or redemption price or the value of such Interest or (b) the holder of any Interest that is junior to such Interest will not receive or retain any property under the Plan.

The Court may find that the Plan is "fair and equitable" with respect to a Class of non-accepting impaired Unsecured Claims only if (a) each impaired unsecured Creditor receives or retains under the Plan property of a value as of the Effective Date of such Plan equal to the amount of its Allowed Claim, or (b) the holder of any Claim or Interest that is junior to the Claims of the dissenting Class will not receive or retain any property under the Plan.

The Court may find that the Plan is "fair and equitable" with respect to a Class of non-accepting Secured Claims, only if, under the Plan, (a) the holder of each Secured Claim in such Class retains such holder's lien and receives deferred cash payments totaling at least the Allowed amount of such Secured Claim and having a value, as of the Effective Date of the Plan, equal to or in excess of the value of such holder's interest in the estate's interest in the collateral for the Secured Claim, (b) the collateral for such Secured Claim is sold, the lien securing such Claims attached to the proceeds, and such liens on proceeds are afforded the treatment described under clause (a) or (c) of this sentence, or (c) the holders of such Secured Claims realize the "indubitable equivalent" of their claims.

**D.      Release.**

None of the officers, shareholders, financial advisors, attorneys, or employees of the Debtor ("**Released Parties**") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan or financial obligations and claims dealt with in this Plan or in the bankruptcy case.

**E.      Permanent Injunction.**

Confirmation of the Plan shall result in the issuance of a permanent injunction against the: (i) collecting of Claims against the Reorganized Debtor in any manner other than as provided for in the Plan; and (ii) collecting any disallowed Claim from any guarantor, partner, officer, manager or member of the Debtor that would otherwise be liable to the holder of such disallowed Claim except as otherwise provided for in the Plan.

**F.      Recommendation of the Debtor**

The Debtor believes that the Plan is in the best interests of all Creditors.  Accordingly, the Debtor recommends you vote for acceptance of the Plan and hereby solicits your acceptance of the Plan.

Respectfully submitted,

Dated: **December 22, 2023**          */s/ William H. Gibson* _____

**William H. Gibson**
Managing Member
North Ponderosa, LLC

Presented by:

_____

*/s/ Robert T. DeMarco*

**DeMarco•Mitchell, PLLC**
Robert T. DeMarco, Texas Bar No. 24014543
**Email**    robert@demarcomitchell.com
Michael S. Mitchell, Texas Bar No. 00788065
**Email**    mike@demarcomitchell.com
500 N. Central Expressway, 500
Plano, TX 75074
**T**        972-578-1400
**F**        972-346-6791

**Attorneys for the Debtor and Debtor-
in-Possession**

# EXHIBIT "A"

The Debtor's Plan of Reorganization follows.

**IN THE UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF TEXAS**

**SHERMAN DIVISION**

| | |
|---|---|
| IN RE: | **Case No.:**   **23-41387-BTR-11** |
| **North Ponderosa, LLC,** | **Chapter:**   **11** |
| 45-2798124 | |
| 9418 Shipman | |
| Rowlett, TX 75088 | |
| **Debtor.** | |

**NORTH PONDEROSA, LLC'S PLAN OF REORGANIZATION**
**[DATED DECEMBER 22, 2023]**

Pursuant to section 1121(a) of the Bankruptcy Code[1], **North Ponderosa, LLC**, the debtor and debtor-in-possession in this Case hereby proposes this Plan of Reorganization

**INTRODUCTION**

The purpose of this Plan is to provide the details of the Debtor's proposed distributions of money and/or property to its Creditors.  After the Plan has been confirmed, the Bankruptcy Court will retain jurisdiction to determine the allowance of all Claims and to effectuate and enforce the terms of this Plan.

**ARTICLE 1:   PLAN SUMMARY**

1.1.   <u>**Liquidation**</u>:  The Plan provides for the sale of the Real Property.

1.2.   <u>**Distribution**</u>:  The Plan provides for a distribution of the Sale Proceeds to the holders of Allowed Claims and Allowed Interests according to priority as established by the Bankruptcy Code.

1.3.   <u>**Classes**</u>:  The Plan provides for:

| | |
|---|---|
| **1** | Class of priority Claims; |
| **2** | Classes of secured Claims; |
| **1** | Classes of unsecured Claims; and |
| **1** | Classes of equity security holders. |

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holder has been circulated with this Plan.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

---

[1]  All capitalized terms used herein shall have the meaning attributed to them in section 8.1 of this Plan.

EXHIBIT "A"

## ARTICLE 2:   CLASSIFICATION OF CLAIMS AND INTERESTS

| | | | |
|---|---|---|---|
| 2.1. | **Class 1A** | ................. | The claim of Collin County for *Ad Valorem* taxes, to the extent Allowed as a Secured Claims under 11 U.S.C. 506 of the Bankruptcy Code. |
| 2.2. | **Class 1B** | ................. | The Claim of Pavo Salvaje, LLC, to the extent Allowed as a Secured Claim under 11 U.S.C. 506 of the Bankruptcy Code. |
| 2.3. | **Class 2** | ................. | All Allowed Claims entitled to priority under § 507(a) of the Bankruptcy Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)). |
| 2.4. | **Class 3** | ................. | All non-priority unsecured Claims Allowed under § 502 of the Bankruptcy Code. |
| 2.5. | **Class 4** | ................. | Equity Interests of the Debtor |

## ARTICLE 3:   TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIOIRTY TAX CLAIMS AND QUARTERLY AND COURT FEES

| | | |
|---|---|---|
| 3.1. | **Unclassified Claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.2. | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.3. | **Priority Tax Claims** | Each holder of an Allowed Priority Tax Claim against the Debtor shall receive on the Effective Date, in full satisfaction, release and discharge of such Allowed Priority Tax Claim, at the election of the liable Debtor, either:  (i) Cash payment in the amount of such holder's Allowed Priority Tax Claim; (ii) deferred Cash payments in full on the Distribution Date of a value as of the Effective Date, equal to the Allowed amount of such Claim; or (iii) such other terms as may be agreed upon by such holder and the liable Debtor.  The rate of interest to be paid on Allowed Priority Tax Claims that are paid out over five (5) years shall be equal to the underpayment rate specified in 26 U.S.C. § 6621 (determined without regard to 26 U.S.C. § 6621(a)) as of the Effective Date (the underpayment rate is currently 8.0%). |
| 3.4. | **Statutory Fees** | All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan have been paid or will be paid on the effective date. |
| 3.5. | **Prospective Quarterly Fees** | All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. |

EXHIBIT "A"

## ARTICLE 4:    TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1  **Claims and Interests shall be treated as follows under this Plan**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1A - Secured Claim of **Collin County** for *Ad Valorem* taxes | ☒ Impaired<br>☐ Unimpaired | Each holder of an Allowed Class 1A Claim payable to a taxing authority for *ad valorem* taxes shall retain its full rights and liens to the extent of its Allowed Secured Tax Claim until its Allowed Secured Tax Claim has been paid in full.<br><br>Payment shall be made in full no later than five (5) years from and after the Petition Date in equal monthly payments.  More specifically, the prepetition and post-petition *ad valorem* taxes of each holder of an Allowed Class 1A Claim shall be treated as follows:<br><br><u>Liens and Interest</u>.  Any and all liens (both those arising prepetition and post-petition) held by the holder of an Allowed Class 1A Claim shall be preserved in any transfer of assets under the Plan.  Each holder of an Allowed Class 1A Claim shall be entitled to receive interest from the Petition Date to the Effective Date pursuant to 11 U.S.C. § 506(b), as well as from the Effective Date until paid in full under 11 U.S.C. § 1129(b), at a statutory rate of 1% per month as required by 11 U.S.C. § 511.  If the post-petition *ad valorem* taxes are not paid prior to the State law delinquency date, each holder of an Allowed Class 1A Claim shall be entitled to receive any penalties and interest that accrue under State law based on the nonpayment of such tax.<br><br><u>Default</u>.  In the event the Post-Confirmation Debtor fails to timely pay an Allowed Class 1A Claim or a post-petition tax in compliance with the Plan, the Post-Confirmation Debtor shall be in default, and, subject to Section 10.4 of the Plan, the holder of the affected Allowed Class 1A Claim may pursue remedies in accordance with that section. |
| Class 1B - Secured Claim of **Pavo Salvaje, LLC** | ☒ Impaired<br>☐ Unimpaired | <u>Class 1B Summary</u>.  Class 1B consists of the Secured Claim of Pavo Salvaje, LLC, and is |

EXHIBIT "A"

allegedly secured by the Real Property.

<u>Payments</u>. No monies shall be distributed to the members of Class 1B until the holder of an Allowed Class 1A claim is paid in full. Thereafter the Allowed Class 1B Claim, plus interest thereon, shall be paid by Post-Confirmation Debtor from the Sales Proceeds on or before the Distribution Date.

<u>Collateral</u>. Except to the extent inconsistent herewith or with the law, the validity and priority of the lien and security interest securing the Allowed Class 1B Claim shall remain in full force and effect following the Effective Date.

<u>Estimation of Amount</u>. Debtor estimates the aggregate of all Allowed Class 2 Claims is $600,400.00 based upon the Debtor's Schedules.

| | | |
|---|---|---|
| Class 2 - Priority Claims excluding those in Article 3 of this Plan | ☐ Impaired<br>☑ Unimpaired | Class 2 consists of all Allowed Priority Claims against the Debtor.<br><br><u>Payment</u>. No monies shall be distributed to the members of Class 2 until the holders of Allowed Class 1A and 1B are paid in full. Thereafter each holder of an Allowed Claim in Class 2 shall be paid by Post-Confirmation Debtor from the Sales Proceeds on or before the Distribution Date.<br><br><u>Estimation of Amount</u>. Debtor estimates the aggregate of all Allowed Class 2 Claims is $0.00 based upon the Court's claim register. |
| Class 3 – Non-priority unsecured Claims | ☑ Impaired<br>☐ Unimpaired | Class 3 consists of Allowed Claims against Debtor, (including Claims arising from the rejection of executory contracts and/or unexpired leases) other than: (i) Administrative Claims; (ii) Priority Tax Claims; or (iii) Claims included within any other Class designated in this Plan. Class 3 shall be deemed to include those Creditor(s) holding an alleged Secured Claim against Debtor, for which: (y) no collateral exists to secure the alleged Secured Claim; and/or (z) liens, security interests, or |

EXHIBIT "A"

other encumbrances that are senior in priority to the alleged Secured Claim exceed the fair market value of the collateral securing such alleged Secured Claims as of the Petition Date.

<u>Payment</u>. No monies shall be distributed to the members of Class 3A until the holders of Allowed Class 1A, 1B, and 2, if any, are paid in full.  Thereafter each holder of an Allowed Unsecured Claim in Class 3 shall be paid by Post-Confirmation Debtor from the Sales Proceeds on or before the Distribution Date.

<u>Wolf & Henderson, P.C.</u>  Wolf & Henderson, P.C. shall receive an Allowed Class 3 Claim in the amount of $1,200,000 and 12.5% of the net sales proceeds from the sale of the Property.  If the Property sells for $2,000,000 or less, Wolf & Henderson, P.C. shall receive an Allowed Class 3 Claim in the amount of 25% of the net sales proceeds.

<u>The Law offices of W. Steven Walker.</u>  The Law offices of W. Steven Walker shall receive an Allowed Class 3 Claim in the amount of $425,000 and 12.5% of the net sales proceeds from the sale of the Property.  If the Property sells for $2,000,000 or less, the Law Offices of W. Steven Walker shall receive an Allowed Class 3 Claim in the amount of 25% of the net sales proceeds.

| Class 4 – Equity Security Holders of the Debtor | ☐ Impaired<br>☑ Unimpaired | Class 4 consists of the holders of Allowed Interests in the Debtor.  The holder of an Allowed Class 4 Interest shall retain their interests in the Post-Confirmation Debtor and shall receive distributions, if any, in accord with the terms of this Plan and the Debtor's membership agreement.  In no event shall distributions be made to the holder of an Allowed Interest in Class 4 until all Allowed Creditor Claims are paid in full. |

EXHIBIT "A"

## ARTICLE 5:   ALLOWANCE AND DISALLOWANCE OF CLAIMS

| | | |
|---|---|---|
| 5.1. | **Disputed Claim** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.2. | **Delay of distribution on a disputed Claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order. |
| 5.3. | **Settlement of disputed Claims** | The Post-Confirmation Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure |

## ARTICLE 6:   EXECUTORY CONTRACTS

| | | |
|---|---|---|
| 6.1. | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date:<br><br>• Agricultural lease of the Real Property with Donald Lee Cardwell |
| | | (b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.1(a) above, or before the date of the order confirming this Plan, upon the date of the entry of the order confirming this Plan.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than **ninety (90)** days after the Effective Date. |

## ARTICLE 7:   MEANS FOR IMPLEMENTATION OF THE PLAN

| | | |
|---|---|---|
| 7.1. | **General** | The Debtor proposes to implement and consummate this Plan through the means contemplated by §§ 1123 (specific reference is made to §§ 1123(a)(5)(D), and 1123(b)(4)), 1124, 1129, and 1141(c) of the Bankruptcy Code. |

EXHIBIT "A"

| 7.2. | **Liquidation Process** | The Post-Confirmation Debtor shall fund distributions and satisfy Allowed Claims and Allowed Interests under the Plan using cash on hand and the Sale Proceeds. |
|---|---|---|
| 7.3. | **Sale of the Real Property** | 7.3.1.  **Sale Transaction**.  On the Effective Date, the Post-Confirmation Debtor shall be authorized to employ a broker to sell the Real Property free and clear of all Liens, Claims, or other encumbrances without the need of further Court Order. |
| | | 7.3.2.  **Timelines**.  The Post-Confirmation Debtor shall use best efforts to market the Real Property and shall be afforded a period of 1 year from the Effective Date to effectuate a sale. |
| | | 7.3.3.  **Conversion to Chapter 7**.  If the Closing Date does not occur with 1 year from the Effective Date, this case shall be converted to one under Chapter 7 of the Bankruptcy Code upon the filing of a Notice of Conversion by the Post-Confirmation Debtor. |
| 7.4. | **Post-Confirmation Debtor and revesting of assets** | 7.4.1.  **Management of Post-Confirmation Debtor**.  The management of Post-Confirmation Debtor will remain unaltered. |
| | | 7.4.2.  **Revesting**.  On the Effective Date, title to all assets, claims, Causes of Action, properties, and business operations of the Debtor and of the Estate shall vest and/or revest in Post-Confirmation Debtor, and thereafter, Post-Confirmation Debtor shall own and retain such assets free and clear of all liens and Claims, except as expressly provided in this Plan.  From and after the Effective Date, except as otherwise described in this Plan, Post-Confirmation Debtor shall own and operate such assets without further supervision by or jurisdiction of this Court, except as otherwise provided herein.  From and after the Effective Date, in accordance with the terms of this Plan and the Confirmation Order, Post-Confirmation Debtor shall perform all obligations under all executory contracts and unexpired leases assumed in accordance with Article 6 of this Plan. |
| | | 7.4.3.  **Disbursing Agent**.  Post-Confirmation Debtor shall serve as disbursing agent, without bond, for purposes of making transfers and payments under this Plan. |
| 7.5. | **Wind Down** | 7.5.1.  After the Effective Date, pursuant to the Plan, the Post-Confirmation Debtor shall wind down, sell, liquidate, dispose of property and compromise or settle any Claims, Interests, or Causes of Action remaining with the Post-Confirmation Debtor after consummation of the Sale, without approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules as more fully set forth in section 7.5. |
| | | The Post-Confirmation Debtor shall be authorized to file |

EXHIBIT "A"

certificates of dissolution and any and all other corporate and company documents necessary to effectuate the wind down without further action under applicable law, regulation, order, or rule, including any action by the members, the board of directors, or board of directors or similar governing body of the Debtor.

## ARTICLE 8:  GENERAL PROVISIONS

8.1.  **Definitions**

The definitions set forth in § 101 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

8.1.1.  **Administrative Claim** means any right to payment constituting a cost or expense of administration of the Case of a kind specified under § 503(b) of the Bankruptcy Code and entitled to priority under §§ 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (i) any actual and necessary costs and expenses of preserving the Debtor's Estate; (ii) any actual and necessary costs and expenses of operating the Debtor's business enterprise; (iii) any indebtedness or obligations incurred or assumed by the Debtor in connection with the conduct of its business enterprise; (iv) all compensation and reimbursement of expenses to the extent awarded by the Court under §§ 330, 331 or 503 of the Bankruptcy Code; (v) any fees or charges assessed against the Debtor's Estate under § 1930 of chapter 123 of title 28 of the United States Code; and (vi) any Claim for goods delivered to the Debtor within twenty days of the Petition Date and entitled to administrative priority pursuant to § 503(b)(9) of the Bankruptcy Code.

8.1.2.  **Allowed Amount** means the amount in lawful currency of the United States of any Allowed Claim, or the number of shares representing any Allowed Interest.

8.1.3.  **Allowed** means, with reference to any Claim or Interest: (i) a Claim against or Interest in the Debtor, proof of which, if required, was filed on or before the Bar Date, which is not a Contested Claim or Contested Interest; (ii) if no proof of claim or interest was so filed, a Claim against or Interest in the Debtor that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009; or (iii) a Claim or Interest allowed hereunder or by Final Order.  Moreover, the following Claims or Interests are not Allowed:  (i) any Claim or Interest allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Court; (ii) any Claim or Interest, or any portion

EXHIBIT "A"

thereof, which is subsequently withdrawn, disallowed, released or waived by the holder thereof, by this Plan, or pursuant to a Final Order; and (iii) any Claim or Interest, or any portion thereof, which is attributable to punitive damages or penalties.

8.1.4.  **Avoidance Action** means any claim or cause of action belonging to the Debtor and arising under the Bankruptcy Code including, but not limited to, §§ 544, 547, 548 and 550.

8.1.5.  **Ballot** means each of the ballot forms distributed with the Disclosure Statement to each holder of an impaired Claim or Interest (other than to holders not entitled to vote on the Plan) upon which is to be indicated, among other things, acceptance or rejection of the Plan.

8.1.6.  **Bankruptcy Code** means Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the date hereof.

8.1.7.  **Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

8.1.8.  **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under § 2075 of title 28 of the United States Code, and local rules of the Court, as the context requires, and as in effect on the date hereof.

8.1.9.  **Bar Date** means the deadline by which a Claim must have been timely filed.  The Bar Date for all Administrative Claims is the date that is ninety (90) days after the Effective Date.

8.1.10. **Business Day** means any day other than a Saturday, a Sunday or a "legal holiday" as that phrase is defined in Bankruptcy Rule 9006(a).

8.1.11. **Case** means the above entitled and numbered case which was commenced by the Debtor's filing of a voluntary petition for relief pursuant to the Bankruptcy Code.

8.1.12. **Causes of Action** means any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtor arising before, on or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action the Debtor or the Estate may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise, including but not limited to any claim or cause of action under a policy of insurance, claims, if any, against officers and directors of the Debtor, Avoidance Actions under the Code, and any other causes of action belonging to the Debtor or the Estate.

EXHIBIT "A"

8.1.13. **Claim** means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

8.1.14. **Claimant** means the holder of a Claim or Interest.

8.1.15. **Claims Objection Deadline** means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be ninety (90) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein.

8.1.16. **Class** means all of the holders of Claims or Interests with respect to the Debtor that has been designated as a class in Article 4 hereof.

8.1.17. **Closing Date** means the date the sale of the Real Property closes.

8.1.18. **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

8.1.19. **Confirmation Date** means the date of entry by the Bankruptcy Court of an order confirming the Plan.

8.1.20. **Confirmation Hearing** means the hearing or hearings to be held before the Bankruptcy Court in which the Debtor shall seek Confirmation of this Plan.

8.1.21. **Confirmation Order** means the Final Order confirming this Plan.

8.1.22. **Contested** when used with respect to a Claim or Interest, means a Claim against or Interest in the Debtor that is: (i) listed in the Debtor's Schedules as disputed, contingent, or unliquidated and as to which a proof of claim has been timely filed; (ii) listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim or Interest has been filed with the Bankruptcy Court, to the extent the proof of Claim or Interest amount exceeds the amount provided for in the Debtor's Schedules; or (iii) the subject of an objection which has been or may be timely filed by any party in interest or the United States Trustee and which claim has not been disallowed by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim or Interest, such a Claim or Interest shall be a Contested Claim or Contested Interest only to the extent of the objection.

EXHIBIT "A"

8.1.23. **<u>Creditor</u>** means holder of a Claim as of the Petition Date.

8.1.24. **<u>Debtor</u>** means the Debtor in this Case as the context requires.

8.1.25. **<u>Disclosure Statement</u>** means the Disclosure Statement for this Plan, together with any supplements, amendments, or modifications thereto.

8.1.26. **<u>Distribution Date</u>** means fourteen days after the Closing Date.

8.1.27. **<u>Entity</u>** includes any individual, partnership, corporation, estate, trust, governmental unit, person, and the United States Trustee.

8.1.28. **<u>Estate</u>** means the bankruptcy estate of the Debtor created by Section 541 of the Bankruptcy Code upon the commencement of this Case.

8.1.29. **<u>Final Order</u>** means: (i) an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing, shall then be pending or, (ii) in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed by the highest court to which such order may be appealed, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the Confirmation Order may be treated as a Final Order if no stay pending appeal has been obtained.

8.1.30. **<u>Initial Distribution Date</u>** means the first Business Day on which a distribution is made under the Plan to holders of Allowed Claims.

8.1.31. **<u>Insider</u>** means: (i) a director of the Debtor; (ii) an officer of the Debtor; (iii) a person in control of the Debtor; (iv) a partnership in which a Debtor is general partner; (v) a general partner of the Debtor; (vi) a relative of a general partner in, general partner of, or person in control of the Debtor, (vii) an affiliate (defined in § 101(2) of the Bankruptcy Code) of the Debtor or an Insider of an affiliate as if such affiliate were a Debtor; and (viii) a managing agent of the Debtor.

8.1.32. **<u>Interest</u>** means: (i) the membership interests or ownership interests in the Debtor; and (ii) any right or option, however arising, to acquire a membership interest or any other equity interest in the Debtor.

EXHIBIT "A"

8.1.33. **Lien** means all valid and enforceable liens, security interests, claims and encumbrances against any property of the Debtor's estate, which is permitted by, or not avoided pursuant to the Bankruptcy Code.

8.1.34. **North Ponderosa** means North Ponderosa, LLC.

8.1.35. **Petition Date** means July 31, 2023, the date the Debtor filed a voluntary bankruptcy petition commencing this Case.

8.1.36. **Plan** means this "*North Ponderosa, LLC's Plan of Reorganization [Dated December 22, 2023]*", including all exhibits and attachments, each of which is hereby incorporated and made part thereof, as modified or amended from time to time in accordance with § 1127 of the Bankruptcy Code.

8.1.37. **Plan Rate** means the Prime Rate as of the Effective Date or such other rate of interest as determined by the Bankruptcy Court.

8.1.38. **Post-Confirmation Debtor** means, North Ponderosa after the entry of the Confirmation Order.

8.1.39. **Prime Rate** means the prime interest rate quoted and published from time-to-time in the "Money Rates" section of the *Wall Street Journal*.

8.1.40. **Priority Claim** means all Claims entitled to priority under §§ 507(a)(2)-(a)(7) and (a)(9)-(a)(10) of the Bankruptcy Code.

8.1.41. **Priority Tax Claim** means all Claims for Taxes entitled to priority under § 507(a)(8) of the Bankruptcy Code and shall include all Tax Claims secured by assets of the Estate.

8.1.42. ***Pro Rata*** means proportionately, so that with respect to a particular Allowed Claim, the ratio of: (i) the monies or property disbursed on account of such Allowed Claim to the amount of such Allowed Claim, is the same as the ratio of (ii) the monies or property disbursed on account of all Allowed Claims of the Class in which such Allowed Claim is included to the amount of all Allowed Claims in that Class.

8.1.43. **Professionals** means those Entities: (i) employed under §§ 327 or 1103 of the Bankruptcy Code; and (ii) entitled, under §§ 330, 503(b), 506(b), and 507(a)(2) of the Bankruptcy Code, to seek compensation for legal, accounting and/or other professional services and the costs and expenses related to such services from the Debtor and/or the Estate.

8.1.44. **Rejection Damages Deadline** means the later of the Bar Date, or thirty (30) days after the entry of an order approving the rejection of an executory contract or unexpired lease.

EXHIBIT "A"

8.1.45. **Real Property** means the real property consisting of 94.255 acres commonly accessed by County Road 413, Collin County, Texas, and more particularly described as Property ID - 2673882; Geographical ID - R-6792-001-0720-1 ABS A0792 JESSE STIFF SURVEY, SHEET I, TRACT 72.

8.1.46. **Sale Transaction** means the sale contemplated in Section 7.3 of this Plan.

8.1.47. **Sales Proceeds** means the net sales proceeds received by the Post-Confirmation Debtor from the sale of the Real Property.

8.1.48. **Schedules** means those schedules, statements and lists filed with the Court by the Debtor pursuant to and in accord with § 521(a)(1) of the Bankruptcy Code and Bankruptcy Rule 1007(b).

8.1.49. **Secured Claim** means a Claim secured by a Lien on any property of the Estate, but only to the extent of the value of the interest of the holder of such Claim in the interest of the Estate in such property, the calculation of which shall not include any demand for default interest, penalty interest or other similar demands.

8.1.50. **Secured Claim Interest Rate** means a fixed interest rate of **.50%** over the Prime Rate or such other rate as the Bankruptcy Court determines at the Confirmation Hearing is necessary to provide the holder of an Allowed Secured Claim with the present value of their collateral.

8.1.51. **Subordinated Claim** means: (i) any Claim, or portion of a Claim, that is subject to subordination under § 510 of the Bankruptcy Code; and (ii) any Claim, or portion of a Claim, for fines, penalties, forfeitures, for multiple, exemplary, or punitive damages, or other non-pecuniary, direct or non-proximate damages.

8.1.52. **Tax** means and includes any federal state, county and local income, *ad valorem*, excise, stamp and other tax of any type or nature whatsoever.

8.1.53. **Tax Claim** means any and all Secured or Priority Claims of the Debtor for the payment of any Taxes: (i) accorded a priority pursuant to § 507(a)(8) of the Code; or (ii) secured by valid Liens on property of the Estate existing on the Confirmation Date.

8.1.54. **United States Trustee** means the Office of the United States Trustee for Region Six.

8.1.55. **Unsecured Claim** means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

EXHIBIT "A"

| | | |
|---|---|---|
| 8.2. | **Effective Date** | The date on which the Confirmation Order becomes a Final Order. |
| 8.3. | **Severability** | If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceabililty and operative effect on any other provision of this Plan. |
| 8.4. | **Binding Effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.5. | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.6. | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided for in this Plan. |
| 8.7. | **Corporate Governance** | The management of Post-Confirmation Debtor will remain unaltered |
| 8.8. | **Retention of Jurisdiction** | The Bankruptcy Court shall retain exclusive jurisdiction over this Case after Confirmation, notwithstanding consummation or substantial consummation, for the following purposes: |

8.8.1.  to consider and effect any modification of this Plan under § 1127 of the Bankruptcy Code;

8.8.2.  to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

8.8.3.  to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

8.8.4.  to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

8.8.5.  to hear and determine all claims that the Debtor, as debtor in possession qua trustee, could assert under the Bankruptcy Code;

EXHIBIT "A"

8.8.6.   to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

8.8.7.   to make such orders as are necessary and appropriate to carry out and implement the provisions of this Plan;

8.8.8.   to approve the reasonableness of any payments made or to be made, within the meaning of § 1129(a)(4) of the Bankruptcy Code;

8.8.9.   to exercise the jurisdiction granted pursuant to §§ 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

8.8.10. to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan;

8.8.11. to hear and determine any controversies with respect to any settlements approved by the Bankruptcy Court;

8.8.12. to determine any and all motions, applications, adversary proceedings and contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Post-Confirmation Debtor; and

8.8.13. to enter a final decree closing any or all Cases.

**Failure of the Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, in or related to the Debtor's Estate, including with respect to the matters set forth herein, this Article 8 shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

| 8.9. | **Rules of construction** | The rules of construction set forth in § 102 of the Code shall apply and are supplemented as follows: |
|---|---|---|

8.9.1.   Any capitalized term used in the Plan that is not defined herein, or other exhibits hereto, but that is defined and used in the Disclosure Statement has the meaning ascribed to that term in the Disclosure Statement.

8.9.2.   The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular article, section, subsection or clauses contained in the Plan.

8.9.3.   Unless otherwise specified, a reference to an article or a section is a reference to that article or section of the Plan.

EXHIBIT "A"

8.9.4.  Any reference in the Plan to a document being in a particular for or on particular terms and conditions meant that the document shall be substantially in such form or substantially on such terms and conditions.

8.9.5.  Any reference in the Plan to an existing document means such document, as it may have been amended, modified or supplemented from time to time as of the Effective Date.

8.10.   All headings utilized in this Plan are for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

---

## ARTICLE 9:   DISCHARGE

---

Check one box.

---

9.1.    ☐               **Discharge if the Debtor is an individual and § 1141(d)(3) is not applicable.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

---

☐               **Discharge if the Debtor is a partnership and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt imposed by this Plan.

---

☐               **Discharge if the Debtor is a corporation and § 1141(d)(3) is not applicable.** On the effective date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

---

☑               No discharge if § 1141(d)(3) is applicable. In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

---

EXHIBIT "A"

## ARTICLE 10:  OTHER PROVISIONS

| | |
|---|---|
| 10.1. **Conditions to Consummation** | The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived by the Debtor: |
| | 10.1.1. The Confirmation Order must have become a Final Confirmation Order. |
| | 10.1.2. No request for revocation of the Confirmation Order under § 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; and |
| | 10.1.3. All actions, documents and agreements necessary to implement the Plan shall have been effectuated or executed. |
| | 10.1.4. **Waiver of Conditions**.  Each of the conditions set forth above may be waived in whole or in part by the Debtor in its sole and absolute discretion, without any notice to parties in interests or the Bankruptcy Court, and without a hearing.  The Debtor's waiver of any one condition shall not be deemed a waiver of any other condition. |
| 10.2. **Binding Effect** | Except as otherwise provided in § 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan. |
| 10.3. **Injunction** | 10.3.1. **Permanent Injunction**.  Except as otherwise expressly provided in, or permitted under, this Plan, all Creditors and Interest holders, are permanently enjoined on and after the Effective Date against the collecting of Claims against the Post-Confirmation Debtor in any manner other than as provided for in the Plan. |
| | 10.3.2. **Temporary Injunction**.  Except as otherwise expressly provided in, or permitted under, this Plan, all Creditors are temporarily enjoined from commencing or continuing any proceeding against any guarantor, partner, officer, manager or member of the Debtor that would otherwise be liable to such Creditor so long as the Post-Confirmation Debtor is not in default respecting that Creditor's treatment under the Plan.   The temporary injunction terminates as to each such Creditor when: (i) the Post-Confirmation Debtor fails to cure any default as set forth in Section 10.4 of the Plan; or (ii) the Post-Confirmation Debtor has tendered all payments to such Creditor as provided for in this Plan.   Any statute of limitations relating to the collecting of an obligation from any guarantor, partner, officer, |

EXHIBIT "A"

manager or member of the Debtor that is subject to the foregoing temporary injunction is tolled during the temporary injunction period.

**10.3.3. The injunction provisions set forth herein do not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination of the Allowed Amount of any Claims that arose prior to the Effective Date by a court of competent jurisdiction.**

| | |
|---|---|
| 10.4. **Notice of Default** | <u>Notice of Default</u>.   Except as otherwise provided herein with respect to the treatment of a Class of Creditors, in the event of any alleged default under the Plan, any Creditor or party-in-interest must give a written default notice to the Post-Confirmation Debtor with copies to counsel of record for the Post-Confirmation Debtor specifying the nature of the default. Upon receipt of the default notice, the Post-Confirmation Debtor shall have ten (10) days to cure such default from the time of receipt of the default notice.  If such default has not been cured within the applicable time period any such Creditor or party-in-interest shall have the right to exercise any and all available remedies, including the right to undertake foreclosure upon any collateral securing the obligation, if applicable. |
| 10.5. **Miscellaneous** | 10.5.1. <u>Request for Relief Under Section 1129(b)</u>.  In the event any Class of Creditors or Interests shall fail to accept this Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor requests the Bankruptcy Court to confirm this Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code.

10.5.2. <u>Incorporation of Rule 9019</u>. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein.

10.5.3. <u>Computation of Time</u>.  The computation of any time periods prescribed or allowed by the Plan shall be governed by Bankruptcy Rule 9006.

10.5.4. <u>Exhibits</u>.  All exhibits to the Plan are incorporated into the Plan and shall be deemed to be part of the Plan.

10.5.5. <u>Plan Controls</u>.  The provisions of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Final Confirmation Order shall control over the contents of the Plan.

10.5.6. <u>Modification</u>.  The Debtor may alter, amend or modify this Plan under § 1127 of the Bankruptcy Code or as otherwise permitted by law prior to Confirmation.  Further, the Post- |

EXHIBIT "A"

Confirmation Debtor may also seek to modify the Plan after Confirmation and prior to substantial consummation of the Plan so long as the treatment of the holders of Allowed Claims or Interests are not materially or adversely affected.

10.6.    **Due Authorization**.  Each and every Claim and Interest holder who elects to participate in the distributions provided for herein warrant that such Claim or Interest holder is authorized to accept, in consideration of such Claim against or Interest in the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, expressed or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claim or Interest holder under this Plan.

10.7.    **Authorization of Corporate Action**.  All matters and actions provided for under this Plan involving the structure of the Debtor or action to be taken by or required of the Debtor or Post-Confirmation Debtor shall be deemed to have occurred and be effective as provided herein, and shall be deemed to be authorized and approved in all respects without any requirement for further action by the members or partners of the Debtor, as applicable.

10.8.    **Further Assurances and Authorizations**.  The Debtor and/or the Post-Confirmation Debtor, if and to the extent necessary, shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions, of this Plan.

10.9.    **Privileged Communications; Work Product.**    For purposes of any proprietary, confidential or privileged information or communication, including attorney-client privileged communications, and documents that would otherwise constitute attorney work product, the Post-Confirmation Debtor shall succeed to the interest of the Debtor and the Estate, to the extent provided by applicable law.

10.10.  **No Interest**.  Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty or late charge is to be allowed on any Claim subsequent to the Petition Date.

10.11.  **No Attorneys' Fees**.  No attorneys' fees will be paid with respect to any Claim, other than Claims of professionals employed by the Debtor, except as specified herein or as allowed by a prior order of the Bankruptcy Court.

10.12.  **Post-Confirmation Actions**.  After Confirmation, the Post-Confirmation Debtor may, with the approval of the Bankruptcy

EXHIBIT "A"

Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.

10.13. **Post-Confirmation Conversion and/or Dismissal**.  Any Creditor or interested party, in the event of a default under the terms of this Plan, may file a motion to dismiss or convert this case pursuant to § 1129 of the Bankruptcy Code after the Plan is confirmed.  If the Bankruptcy Court orders the case converted to one under Chapter 7, then all property that had been property of the chapter 11 bankruptcy estate, and not previously disbursed under the terms of this Plan, shall revest in the Chapter 7 bankruptcy estate.  Further, to the extent relief from stay had not previously been granted during the chapter 11 bankruptcy process, a new automatic stay shall be reimposed upon all property of the Chapter 7 bankruptcy estate.

10.14. **Minimum Distribution**.  Notwithstanding anything to the contrary in this Plan, the Post-Confirmation Debtor shall not be required to make distributions under this Plan of a sum less than $100.00 to any Allowed Claim holder.  In such case, the Allowed Amount of such Claims shall be reduced to zero and such funds shall be retained by the Post-Confirmation Debtor.

10.15. **Substantial Consummation**.  The Plan shall be deemed to have been substantially consummated when the Post-Confirmation Debtor closes the Sale Transaction and makes an initial distribution pursuant to the terms of the Plan.

10.16. **Notices**.  All notices, requests, elections or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested.  Any notices required to be delivered to the Debtor shall be addressed as follows:

**North Ponderosa, LLC**
**9418 Shipman**
**Rowlett, TX 75088**
**Attn.:  William H. Gibson**

With a copy to:

**Robert T. DeMarco**
**DeMarco Mitchell, PLLC**
**500 N. Central Expressway, 500**
**Plano, TX 75074**

EXHIBIT "A"

10.17.  **Notices and Distributions**.  On and after the Effective Date, all notices, requests and distributions to Claimants shall be sent to the last known address of: (1) the Claimant or its/his/her attorney of record as reflected in the Claimant's proof of claim; or (2) if there is no such evidence of a last known address, to the last known address of the Claimant according to the books and records of the Debtor.  Any Claimant may designate another address for the purposes of this Section by providing the Post-Confirmation Debtor written notice of such address, which notice will be effective upon receipt by the Post-Confirmation Debtor.

10.18.  **Unclaimed Property**.  If any property distributed under the Plan by the Post-Confirmation Debtor remains unclaimed for a period of two (2) years the initial date of the attempted delivery such unclaimed property shall be forfeited by the Claimant and the unclaimed property and the right to receive it shall revert to and vest in the Post-Confirmation Debtor free and clear of any claims, rights or interests.  The Post-Confirmation Debtor, on the anniversary of the Effective date, shall file with the Bankruptcy Court a schedule that identifies the name and last-known address of all holders of unclaimed distributions.

10.19.  **Setoff**.  Except as specifically provided in the Plan, no Creditor shall retain any contractual or statutory right to set off any asset in which the Debtor or Post-Confirmation Debtor has an interest in satisfaction of that Creditor's pre-petition Claim. Any right to set off a claim against an asset of Debtor or the Post-Confirmation Debtor which is not specifically retained is waived.

10.20.  **No Admissions**.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Plan Proponents with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety, any classification of any Claim or Interest, or the valuation of any property.

Respectfully submitted,

Dated: **December 22, 2023**

*/s/ William H. Gibson*

**William H. Gibson**
Managing Member
North Ponderosa, LLC

EXHIBIT "A"

Presented by:


/s/ Robert T. DeMarco
**DeMarco•Mitchell, PLLC**
Robert T. DeMarco, Texas Bar No. 24014543
**Email**    robert@demarcomitchell.com
Michael S. Mitchell, Texas Bar No. 00788065
**Email**    mike@demarcomitchell.com
500 N. Central Expressway, 500
Plano, TX 75074
**T**        972-578-1400
**F**        972-346-6791

**Attorneys for the Debtor and Debtor-in-Possession**

EXHIBIT "A"